Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Attorneys for Plaintiff and the Proposed Class*

[*Additional counsel on signature page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA d/b/a UCSF MEDICAL CENTER,<br><br>Defendants. | Case No. 3:23-cv-00598-WHO<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: July 8, 2025<br>Time: 2:00 p.m.<br>Courtroom: Videoconference<br>Judge: Honorable William H. Orrick |

Pursuant to Civil Local Rule 16-10(d), Plaintiff Jane Doe ("Plaintiff") and Defendant The Regents of the University of California d/b/a UCSF Medical Center ("Regents"), by and through their respective counsel of record, hereby submit the following Joint Case Management Statement in advance of the Case Management Conference scheduled in the above-captioned case for July 8, 2025 at 2:00 p.m. via videoconference before the Honorable William H. Orrick.

## I. CASE SCHEDULE

**Plaintiff's Statement:** Since the last case management, discovery in this case has progressed in a piecemeal fashion, causing significant delays. Regents' production is frequently deficient and/or inaccessible due to ESI issues. Plaintiff has to follow up on many outstanding discovery items both every week through emails and during the Parties' standing call every three weeks. Regents has also often missed discovery deadlines imposed by the federal rules or even itself. Therefore, given the delays Regents has already caused in this case, Plaintiff believes that an additional extension of the case schedule is necessary. Plaintiff intends to propose a specific schedule when she has sufficient information as to when discovery can be complete in this case.

**Regents' Statement:** Regents has been working in good faith not only to respond to Plaintiff's formal discovery requests but also to field her counsel's follow-up requests regarding additional documents or information that they contend they need in this case. Regents will meet and confer with Plaintiff regarding an additional extension of the case schedule. The parties also have a meet and confer call scheduled on July 2, 2025 during which Regents planned to address several of the issues discussed herein.

## II. STATUS OF DISCOVERY

### A. Plaintiff's Requests for Production of Documents ("RFP") Set Two to Regents

**Plaintiff's Statement:** Plaintiff served her RFP Set Two on Regents on August 26, 2024. Regents provided its responses and objections on September 25, 2024. On January 31, 2025, Regents produced Google Tag Manager ("GTM") container files which it claimed fully satisfied Plaintiff's RFP Set Two, Nos. 1 and 2, which sought documents that show which tracking technologies were incorporated on the UCSF website and MyChart portal, the specific pages they were on, the time

period when they were incorporated, what data they transmitted, and aggregated statistics for the number of users that were exposed to the tracking technologies. After an initial review, Plaintiff discovered that these GTM container files contain only lines of code and are insufficient as to several aspects of RFP Nos. 1 and 2. On February 27, 2025, Plaintiff requested Regents provide screenshots of its analytics and/or advertising accounts' dashboards as a supplement to this production. It took Regents three months to finally produce 12 screenshots on May 30, 2025. On June 19, 2025, Plaintiff sent a letter to Regents outlining the deficiencies, and requested additional screenshots that show Regents' audience list, dates of incorporation of tracking technologies, active users by city, among other things. Plaintiff has not received a response as of the filing of this statement.

**Regents' Statement:** Regents maintains that its production of the JSON files for each version of the Google Tag Manager containers associated ucsfhealth.org and the MyChart patient portal was sufficient for purposes of responding to Requests Nos. 1 and 2 in Plaintiff's RFP Set Two. According to publicly-available information from Google regarding Google Tag Manager, "[a] collection of tags, triggers, variables, and related configurations installed on a given website or mobile app is called a container."[1] The JSON file for each container version (*i.e.* the "lines of code"), then, show what tags (*i.e.* code snippets) were added, changed, or removed (which, in combination with the full version history that Regents produced also provides the dates that a particular version was published or went live); the triggers that result in the tags firing when a particular event occurs; as well as variables, which Google defines as "named placeholders for values that are populated when code is run on your website or mobile app."[2] Thereafter, Plaintiff requested that Regents provide screenshots (*i.e.* create documents that did not already exist) from dashboards of its analytics and/or advertising accounts, which Plaintiff claimed would reflect the "data received from the Tracking Technology." Specifically, Plaintiff requested an "event list," "parameter list for a given event," "parameter value for a given event," and "pages and screens report" from Google Analytics 4, all of which Regents produced on May 30, 2024. Three weeks later, on June 19, 2025, Plaintiff made a net new request for additional screenshots and asked several follow-up questions regarding the documents, including what these

---

[1] https://support.google.com/tagmanager/answer/6102821?hl=en#
[2] https://support.google.com/tagmanager/answer/7683056?hl=en

documents reflect, the meanings of terms used within the documents, etc. Regents is in good faith reviewing these net new requests and will respond in due course.

### B. Plaintiff's RFP Set Three

**Plaintiff's Statement:** Plaintiff served her RFP Set Three on Regents on April 29, 2025, seeking documents that show what data and information was available to Regents through its Meta and Google analytics/advertising accounts. Regents only provided its objections on June 12, 2025, but has not provided any responsive documents to date.

**Regents' Statement:** Regents is identifying and gathering information and/or documents in response to Plaintiff's Requests Nos. 1 and 2 in RFP Set Three.

### C. GTM IDs.

**Plaintiff's Statement:** Plaintiff issued a third party subpoena to Google on April 1, 2025 seeking production of data relevant to this case. As a part of its response, Google requested that Plaintiff provide Regents' GTM IDs in order to facilitate its preservation and search for data. On May 28, 2025, Plaintiff promptly asked Regents for its permission to provide Google with Regents' GTM IDs. Plaintiff explained that Google is authorized by the Stipulated Protective Order to receive this information as it is "[t]he author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information." ECF No. 45. Plaintiff has since followed up with Regents on this issue for at least eight times, on June 2, June 3, June 5, June 11, June 16, June 19, June 24, and June 27. Regents asked on June 17 what data the GTM IDs would enable Google to access and how it would be relevant. Plaintiff explained on the same day that GTM IDs would allow Google to locate any data it received from Regents, which is at the heart of this litigation. Only now, for the first time in this statement, has Regents elaborated that it is not opposed to sharing its GTM IDs with Google but only with respect to what data may be produced in response to Plaintiff's subpoena. While Plaintiff disagrees that any portion of her subpoena seeks irrelevant materials, that does not explain Regents' delay in agreeing to share the GTM IDs with Google so that—at a minimum—relevant data is preserved. Indeed, Plaintiff expected Regents would have already shared this information with Google to comply with its preservation obligations at the outset of this case. That

it did not do so, and is now delaying Plaintiff's efforts to preserve this data, is inexcusable.

**Regents' Statement:** Since Plaintiff's May 28, 2025 request for Regents' permission to provide Google with the ID numbers for the GTM containers associated with ucsfhealth.org and the MyChart patient portal, Regents has trying to ascertain what data Google would be able to search for and produce if provided with the GTM container IDs. All Plaintiff has been able to explain is that data that comes in from a particular website is indexed against a GTM container ID and that Google supposedly would be able to search for and produce "underlying analytics data." Plaintiff's counsel has also explained that because "our case alleges that Regents disclosed UCSF users' health data to third parties like Meta and Google," "any data Google received from Regents is necessarily relevant to the litigation." However, "any data" is not the same as "health data," and certainly, "any data" that may have been transmitted to Google from pages of ucsfhealth.org that do not have the agreed-upon in scope functionalities, is not relevant or proportional to the needs of this case. During the parties' meet and confer discussions regarding the GTM container IDs, Plaintiff did not inform Regents that Google's request for container IDs was "to facilitate its preservation . . . for data." Thus, while Regents is not necessarily opposed to Plaintiff's provision of Google with the GTM container IDs "to facilitate its preservation and search for data," Regents would like to meet and confer with Plaintiff (and if necessary Google) on a mutually agreeable process by which Regents has an opportunity to review data that Google is able to locate (if any) for relevance, confidentiality concerns, etc. before any data gets produced.

### D. Source Code for UCSF Website

**Plaintiff's Statement:** On January 17, 2025, Regents made its initial production of source code for the UCSF website at issue. However, after Plaintiff retained expert and reviewed this source code, they learned that it is encoded and inaccessible. Plaintiff promptly notified Regents of this issue on April 28, 2025. It took Regents two months to finally re-produce a usable version of the source code on June 25, 2025.

Separately, on May 20, 2025, Plaintiff informed Regents her intention to provide this source code to third party Luma Health, Inc. ("Luma") to facilitate a 30(b)(6) deposition with Luma. This is

necessary because Luma was the entity that cooperated with Regents to implement online appointment features on Regents' websites and was involved with the incorporation of certain tracking technologies. Regents still has not provided its position on this issue as of the filing of this statement.

**Regents' Statement:** Plaintiff's counsel previously explained during a June 5, 2025 meet and confer call that they would like to use the ucsfhealth.org source code in their deposition of Luma's 30(b)(6) witness. Following further consideration of Plaintiff's counsel's representations during that call regarding how the source code would be used in the deposition and the types of questions Plaintiff's counsel intends to ask, Regents will not oppose provision of the source code to Luma's 30(b)(6) witness during the deposition provided that the witness executes Exhibit A to the Stipulation and Protective Order Governing Confidentiality of Discovery Material. However, Regents would like to further meet and confer with Plaintiff on this issue to the extent that Plaintiff is seeking to provide the comprehensive source code documents to Luma *in advance of* the deposition, which is not what Regents understood Plaintiff's request to be.

### E. Supplemental Production

**Plaintiff's Statement:** On April 25, 2025, Regents made a supplemental production of three documents in responsive to Plaintiff's RFP Set One. Plaintiff was under the impression that Regents has finished producing all documents responsive to RFP Set One months ago, and therefore asked Regents to clarify why these documents were left out in the first place. Regents stated that these three documents were related to Google Analytics, and were not included in the initial production because that was before Plaintiff's amended complaint (ECF No. 82) expanded the scope of the case to tracking technologies other than Meta Pixel. On May 27, 2025, Plaintiff explained in a letter that Regents' initial production also contained Google-specific documents, as the Parties previously agreed that such documents would be included. Therefore, Regents' late-stage production now suggests its initial collection and review was incomplete. Plaintiff has not received Regents' response as of the filing of this statement.

**Regents' Statement:** Regents completed a linear review of every document that hit on an agreed-upon search term and produced responsive documents. At the time of the review and

production, the scope of discovery in this case included only the Meta Pixel. Given Plaintiff's amended complaint, Regents in good faith made a supplemental production in consideration of the agreed-upon expansion of the scope of discovery in this case to include web analytics tools or tools that can be used to facilitate targeted web marketing. Plaintiff's follow-up questions regarding the supplemental production are improper discovery on discovery.

### F. Privilege Log.

**Plaintiff's Statement:** On February 7, 2025, Judge Westmore entered the Parties' Stipulated Privilege Log Protocol. ECF No. 87. On March 10, 2025, Regents provided a privilege log for eleven documents it withheld from production on the basis of privilege. On March 13, 2025, Plaintiff sent a letter to Regents explaining the deficiencies of this privilege log, and Regents provided a supplemental privilege log on April 11, 2025. On April 23, 2025, Plaintiff sent another letter detailing the specific deficiencies that still persist in its supplemental log, including its failure to identify sender/recipient for certain emails and its generic and overgeneralized privilege descriptions. Plaintiff also pointed out that certain documents should not be withheld to the extent they can be redacted. It has been over two months and Plaintiff still has not received Regents' response.

**Regents' Statement:** Regents maintains that the supplemental privilege log served on April 23, 2025 provides sufficient information for Plaintiff to evaluate Regents' privilege claims but has been in the process of considering the issues Plaintiff has raised. Regents will provide Plaintiff with a response thereto by July 7, 2025.

### G. Plaintiff's Interrogatories to Regents

**Plaintiff's Statement:** Plaintiff served its Interrogatories to Regents Set One on March 3, 2025. On April 3, 2025, the day after response is due, Regents reached out to Plaintiff for a two-week extension. Plaintiff explained that she was unable to agree to a retroactive extension. On April 28, 2025, 26 days after the initial due date, Regents finally provided its responses to the interrogatories.

Separately, given Regents' responses identified several new individuals—not previously identified in its initial disclosures or elsewhere—as having relevant information with regards to Regents' use of tracking technologies, Plaintiff requested on May 9, 2025 that Regents add these

individuals as new document custodians. Plaintiff further explained on May 20, 2025 that for this document search, Regents should also add any 30(b)(6) witnesses it will designate if they are not already custodians because they too would possess highly relevant documents. Regents stated it would consider this request, and asked Plaintiff to provide search terms to be run for these new custodians. Plaintiff provided these search terms on May 27, 2025. Regents still has not provided its position on this issue as of the filing of this statement.

**Regents' Statement:** Regents is still ascertaining whether adding individuals as new document custodians is relevant and proportional to the needs of this case.

### H.  30(b)(6) Deposition Topics and Witnesses

**Plaintiff's Statement:** Plaintiff served its 30(b)(6) deposition notice on Regents on February 14, 2025. On February 21, 2025, Plaintiff's counsel emphasized that—consistent with the discovery schedule—these depositions should occur before the end of April 2025.

On April 25, 2025, more than two months later, Regents finally provided its objections to the 30(b)(6) deposition topics Plaintiff proposed. The Parties discussed these objections on May 20, 2025, and Plaintiff sent Regents a letter on May 27 memorializing these discussions, along with a redline version of the revised topics for Regents' convenience. Plaintiff has not received Regents' response as of the filing of this statement.

It has been more than four months since Plaintiff served her 30(b)(6) deposition notice on February 14, 2025. Regents still has not provided its designated witnesses as of the filing of this statement, let alone their availabilities.

**Regents' Statement:** On April 3, 2025, during one of the parties' standing meet and confer calls, counsel for the parties agreed to schedule a separate meet and confer call to discuss Plaintiff's 30(b)(6) deposition topics and Regents' potential objections thereto.  The parties thereafter met and conferred on April 16, 2025 regarding the topics and agreed that Regents would serve objections to the deposition notice by April 25, 2025.  Regents served those objections on April 25, 2025.  On May 20, 2025, Plaintiff's counsel agreed to provide a redline of the deposition topics in consideration of the parties' discussion on April 16.  Plaintiff provided that redline on May 27, 2025.

Regents is preparing and will serve responses to Plaintiff's 30(b)(6) deposition notice (in consideration of Plaintiff's redline revisions) by July 18, 2025. In its responses, Regents will affirmatively state which topics it agrees to designate a witness to provide testimony on and the identity of those witnesses. On or before that date, Regents will also provide the witnesses availabilities.

### I. Third Party Discovery

**Luma.** On March 26, 2025, Plaintiff issued a deposition subpoena to Luma for testimony relating to its relationship with Regents and Regents' implementation and use of the tracking technologies on the UCSF website. Plaintiff and Luma are discussing the topics and availabilities for this deposition.

**Epic.** On May 19, 2025, Plaintiff issued both a deposition subpoena and a document subpoena to Epic Systems Corporation ("Epic"). The deposition subpoena seeks testimony relating to its relationship with Regents and Regents' implementation and use of the tracking technologies on the MyChart patient portal. The document subpoena seeks documents relating to the same subject. Plaintiff and Epic are in the process of negotiating these requests, and counsel for the parties have a call scheduled with counsel for Epic on July 3, 2025.

**Meta.** On April 4, 2025, Plaintiff issued a document subpoena to Meta Platforms, Inc. ("Meta") seeking data sufficient to show the number of users whose data Meta received from UCSF, and the number of instances it received such data. Meta provided its responses and objections on April 21, 2025. Plaintiff and Meta are in the process of negotiating these requests.

**Google.** On April 1, 2025, Plaintiff issued a document subpoena to Google LLC ("Google") seeking documents and data relating to Regents' use of Google's tracking technologies. Google provided its responses and objections on May 5, 2025. Plaintiff and Google are in the process of negotiating these requests.

### J. Case Schedule

**Plaintiff's Statement:** The current discovery cut-off is September 17, 2025. ECF No. 89. Due to the extensive delay in discovery to date, an extension of the current case schedule is necessary, especially given that Regents still has not provided its position on adding new custodians for additional

document searches. Plaintiff will propose an extension to Regents once she has sufficient information about the time needed to complete necessary discovery in this case.

**Regents' Statement:** Regents will meet and confer with Plaintiff regarding an extension of the case schedule.

Dated: July 1, 2025

By: /s/ Christian Levis
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

James M. Wagstaffe (94435)
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
PO Box 3835
San Luis Obispo, CA 93403
Telephone: (415) 357-8900
Facsimile: (805) 543-0980
wagstaffe@ammcglaw.com

*Attorneys for Plaintiff and the Proposed Class*

By: /s/ Dyanne J. Cho
**BAKER & HOSTETLER LLP**
Paul G. Karlsgodt (admitted *pro hac vice*)
Teresa C. Chow (CA SBN 237694)
Dyanne J. Cho (CA SBN 306190)
Alexander Vitruk (CA SBN 315756)

*Attorneys for Defendant The Regents of the University of California*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Dyanne J. Cho, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: July 1, 2025                    **BAKER & HOSTETLER LLP**

                                        By:  */s/ Dyanne J. Cho*
                                             Dyanne J. Cho