UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE DOE, et al.,

Plaintiffs,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Defendant.

Case No. 23-cv-00598-WHO (KAW)

**ORDER RE 9/24/26 DISCOVERY LETTERS AT DKT. NOS. 182 AND 186**

Re: Dkt. Nos. 182, 186

[Discovery Letter Nos. 10, 12]

Plaintiffs Jane Does brought this putative class action against Defendant UC Regents regarding the use of tracking technology (*e.g.*, Meta Pixel, Google Analytics, and Google Tag) on its UCSF Medical Center website and within its patient portal, allowing the tracking of user activity. (Third Amend. Compl. ("TAC") ¶¶ 4-5, Dkt. No. 103.) On September 24, 2026, the parties filed six discovery letters. (Dkt. Nos. 179-182, 184, 186.) This order addresses the discovery letters seeking takeout data and class information from databases. (Discovery Letter re Takeout Data, Dkt. No. 182; Discovery Letter re Databases, Dkt. No. 186.)

**A. Takeout Data**

Defendant seeks exports of Plaintiffs' Meta and Google Takeout data, *i.e.*, exports of data that provide information on settings, devices, and activity from an individual's Meta and Google account. (Discovery Letter re Takeout Data at 4.) Defendant contends that such social media and internet activity is discoverable "because it may show that Plaintiffs themselves supplied Meta, Google, or other third parties with the same interests, activities, and condition-related information that Plaintiffs claim the Regents' alleged disclosures revealed--thereby providing an alternative cause of the targeted ads, alleged diminution in the value of their data, purported loss of control over their information, and any other alleged harm." (*Id.* at 5.)

United States District Court
Northern District of California

In response, Plaintiffs point out that Defendant has identified no legal authority suggesting that any of Plaintiffs' claims -- common law invasion of privacy, violation of the Confidentiality of Medical Information Act ("CMIA"), and breach of contract -- "recognize the 'alternative cause' exception Regents' relevance argument turns on." (Discovery Letter re Takeout Data at 7.) Rather, the CMIA would still preclude a healthcare provider from disclosing health information without the statutorily required consent, while the breach of contract claim would still be premised on Defendant's alleged promise not to disclose personal information without a user's consent. (*Id.*; *see also* TAC ¶ 191.) As to the common law privacy claim, the Ninth Circuit has recognized that "[a]ctionable invasions of privacy . . . must be 'highly offensive' to a *reasonable person*, and 'sufficiently serious' and unwarranted so as to constitute an 'egregious breach of the social norms.'" *Davis v. Facebook, Inc.*, 956 F.3d 589, 606 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009)) (emphasis added). In other words, Plaintiffs' individual choices and actions are irrelevant, as the standard is an objective one, not a subjective one that changes based on Plaintiffs' personal internet activity.

Moreover, Plaintiffs correctly observe that Defendant has failed to explain why it needs the discovery at issue, given that Plaintiffs have already provided their web history data reflecting activity on UCSF websites and 37 other health-related sites selected by Defendant, all social media posts hitting on seventy search terms chosen by Defendant and related to health and medical issues, all privacy-related browser and social media settings, and folders from Facebook, Instagram, and Google reflecting advertisements received by Plaintiffs that are attributable to UCSF or the 37 health-related sites. (Discovery Letter re Takeout Data at 8.) Defendant does not respond to this point, instead making broad, generalized statements regarding why Plaintiffs' general social media and internet activity are needed without acknowledging the prior discovery production.

Accordingly, the Court DENIES Defendants' request to require Plaintiffs to produce the Takeout data.

**B. System Data**

Plaintiffs seek data for purposes of class certification and to identify class members,

including in three systems: (1) a database storing Epic/MyChart records and logs, (2) UCSF's Salesforce CDP/Marketing/Health Cloud, and (3) internal warehouses. (Discovery Letter re Databases at 1.)

It appears the requested data is relevant to class certification, including numerosity, commonality, and typicality. In general, "[i]n seeking pre-certification discovery, the plaintiff bears the burden to *either* make a prima facie showing that the Rule 23 class action requirements are satisfied, *or* to show 'that discovery is likely to produce substantiation of the class allegations.'" *McCowen v. Trimac Transp. Servs. (Western)*, No. 14-cv-02694-RS (JSC), 2015 U.S. Dist. LEXIS 118578, at *8 (N.D. Cal. Sep. 3, 2015) (quoting *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)). Thus, courts have permitted discovery of class information -- including names, addresses, and telephone numbers -- to allow Plaintiff's counsel to contact the putative class members "to ascertain whether common questions of law exist, and evaluate the typicality of claims between the Plaintiff and other claimants." *Khalilpour v. Cellco P'ship*, No. C 09-02712 CW (MEJ), 2010 U.S. Dist. LEXIS 43885, at *7 (N.D. Cal. Apr. 1, 2010); *see also McCowen*, 2015 U.S. Dist. LEXIS 118578, at *13 (N.D. Cal. Sep. 3, 2015) (listing cases permitting discovery of class contact information); *Zajonc v. Morgan Stanley & Co. LLC*, No. C-14-5563 EMC, 2015 U.S. Dist. LEXIS 72945, at *2 (N.D. Cal. June 4, 2015).

Here, Plaintiffs explain how the identified databases go to substantiation of the class allegations. First, the Epic/MyChart records appears to be directly relevant, as Plaintiffs have alleged that every individual who took actions in the UCSF MyChart patient portal had their data disclosed to third parties. (*See* Discovery Letter re Databases at 1; TAC ¶¶ 101-05.) Because the Epic/MyChart records include the actions taken by each individual user, including appointment bookings, such information will assist in identifying the putative class members and the data that was allegedly transmitted for each individual. Second, the Salesforce records include the Google Client ID associated with each patient whose data was shared via Google Analytics, along with the individual's names, birthdays, phone numbers, and e-mail addresses. (Discovery Letter re Databases at 2.) Thus, such information likewise goes to the identification of class members. Finally, the internal data warehouse records also go to the identification of class members because

they merge Google Analytics records with medical records and patient contact information. (*Id.*)

In opposition, Defendant contends that the Salesforce records and internal data warehouse are not tracking technologies implemented on the websites at issue. (Discovery Letter re Databases at 4-5.) It is not required, however, that these records also be tracking technologies to be discoverable, or that the records actually contain data that was transmitted to third parties. Rather, it appears that these records contain information on the putative class members by connecting their contact information and medical record numbers with their Google Client ID. In short, these records contain data that will assist Plaintiff in identifying the putative class members whose information was tracked on MyChart. Such information is discoverable at the pre-certification stage, even if the information does not necessarily go to the merits of whether a violation occurred or not.

As to the MyChart records, Defendant does not challenge the relevance of such information to class certification. Instead, Defendants argue that such information is health information that is protected by HIPPA, and that no authorizations have been obtained. (Discovery Letter re Databases at 4.) Courts, however, have permitted discovery of HIPPA-protected medical information of putative class members. *See Bagley v. N.Y. State Dep't of Health*, No. 15 CV 4845 (FB) (CLP), 2017 U.S. Dist. LEXIS 201857, at *4 (E.D.N.Y. Dec. 7, 2017). Such courts have recognized that "HIPAA does not place medical records outside the reach of discovery," but instead allow courts to "issue protective orders in the form of a 'HIPAA-Qualified Protective Order' to allow health providers to disclose a patient's medical information." *Id.* at *4; *see also* 45 C.F.R. §§ 164.512(e)(i)-(ii), (v).

Accordingly, the Court ORDERS Defendant to produce the requested discovery within **21 days** of the entry of a HIPPA-Qualified Protective Order. If the parties believe that the existing stipulated protective order does not satisfy the requirements of a HIPPA-Qualified Protective Order, the parties shall meet and confer and submit a satisfactory HIPPA-Qualified Protective Order within **ten days** of the date of this order.

///

///

This order disposes of Dkt. Nos. 182 and 186.

IT IS SO ORDERED.

Dated: November 13, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California